1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10
11

CLAUDINE YVETTE KOBI, et al.,

No.  1:15-cv-00478-DAD-BAM

12

Plaintiffs,

13

v.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS

14

UNITED STATES OF AMERICA,

(Doc. No. 22.)

15

Defendant.

16
17

　　　　This matter came before the court on October 18, 2016, for hearing of defendant's motion

18

to dismiss pursuant to Federal Civil Procedure Rule 12(b)(1) for lack of subject matter

19

jurisdiction.  (Doc. No. 22.)  Attorney Justin Chou appeared on behalf of plaintiffs Claudine

20

Yvette Kobi and Alexandre Robert Kobi.  Assistant United States Attorney Joseph Frueh

21

appeared on behalf of defendant United States.  Having considered the parties' briefs and oral

22

arguments, for the reasons stated below, defendant's motion will be granted and plaintiffs'

23

complaint will be dismissed.

24

FACTUAL BACKGROUND

25

　　　　On March 26, 2015, plaintiffs Claudine Yvette Kobi and Alexandre Robert Kobi

26

commenced this action against defendant United States of America.  (Doc. No. 1.)  Plaintiffs

27

bring suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680, alleging:

28

(i) negligent failure to maintain picnic tables at Yosemite National Park, (ii) negligent failure to

1

1   maintain trees in the national park, and (iii) loss of consortium.  (*Id.* at 6–9, ¶¶ 21–38.)

2          In their complaint, plaintiffs allege the following.  Claudine Kobi and Alexandre Kobi are

3   married and are citizens of Switzerland.  (Doc. No. 1 at 2, ¶ 5.)  On May 1, 2013, plaintiff

4   Claudine Kobi visited the Swinging Bridge Picnic Area in Yosemite National Park.  (*Id.* at 1, ¶

5   1.)  The picnic area is a developed space within the national park that has a number of

6   improvements and additions, including fences and picnic tables.  (*Id.* at 3, ¶ 10.)  It is maintained

7   by the National Park Service ("NPS"), a federal agency.  (*Id.* at 3, 6, ¶¶ 10, 22.)  Upon arriving to

8   the Swinging Bridge Picnic Area, plaintiff Claudine Kobi sat approximately one hundred feet

9   from the area's perimeter, at a table that had been moved away from its standard location.  (*Id.* at

10   ¶ 12.)  At 1:15 p.m., a large tree branch measuring about eighty four feet long broke from a

11   California Black Oak tree and fell on plaintiff Claudine Kobi.  (*Id.* at 3–4, ¶ 13.)  Plaintiff

12   Claudine Kobi 's right leg and pelvis were crushed.  (*Id.* at 1, ¶ 1.)  She suffered severe fractures

13   as a result of the impact, and subsequently underwent multiple surgeries, experienced life-

14   threatening complications, and suffered other economic and non-economic damages.  (*Id.* at 1, 4–

15   5, ¶¶ 1, 15–18.)  Claudine Kobi  continues to suffer disability and chronic pain.  (*Id.* at 1, ¶ 1.)

16   Plaintiff Alexandre Kobi consequently has suffered loss of support, services, love,

17   companionship, affection, society, and other elements of consortium.  (*Id.* at 5, ¶ 20.)

18          On September 6, 2016, defendant United States filed the motion to dismiss plaintiffs'

19   complaint now pending before the court.  (Doc. No. 22.)  Plaintiffs filed their opposition on

20   September 22, 2016.  (Doc. No. 26.)  On October 11, 2016, defendant filed a reply.  (Doc. No.

21   27.)

22                                   LEGAL STANDARDS

23   I.      **Federal Civil Procedure Rule 12(b)(1)**

24          Defendant moves to dismiss plaintiffs' complaint for lack of subject matter jurisdiction

25   pursuant to Federal Rule of Civil Procedure Rule 12(b)(1).

26          Federal Rule of Civil Procedure 12(b)(1) allows a defendant to raise the defense, by

27   motion, that the court lacks jurisdiction over the subject matter of an entire action or of specific

28   claims alleged in the action.  Federal district courts generally have subject matter jurisdiction over

1   civil cases through diversity jurisdiction, 28 U.S.C. § 1332, or federal question jurisdiction, 28

2   U.S.C. § 1331.  *See Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1068 (9th Cir. 2005).  In a motion to

3   dismiss for lack of subject jurisdiction, a defendant may either attack the allegations of the

4   complaint or the existence of subject matter jurisdiction in fact.  *Thornhill Publ'g Co. v. Gen. Tel.*

5   *& Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

6           When a party brings a factual attack on subject matter jurisdiction, no presumption of

7   truthfulness attaches to the plaintiff's allegations.  *See Thornhill Publ'g Co.*, 594 F.2d at 733.  In

8   such instances, plaintiff thus has the burden of establishing that such jurisdiction does in fact

9   exist.  *Id.*  "[T]he district court is not restricted to the face of the pleadings, but may review any

10  evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of

11  jurisdiction."  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

12                                               ANALYSIS

13          As indicated, defendant moves to dismiss plaintiffs' complaint in its entirety, arguing that

14  their three claims fall within the discretionary function exception to the FTCA, 22 U.S.C.

15  §§1346(b), 2671–80.  (Doc. No. 22 at 2.)[1]  The court analyzes defendant's arguments below.

16  **I.        The FTCA and the Discretionary Function Exception**

17          "As a sovereign, the United States is immune from suit unless it waives such immunity."

18  *Chadd v. United States*, 794 F.3d 1104, 1108 (9th Cir. 2015) (citing *FDIC v. Meyer*, 510 U.S.

19  471, 475 (1994)).  The waiver of sovereign immunity is a prerequisite to federal court

20  jurisdiction.  *Tobar v. United States*, 639 F.3d 1191, 1195 (9th Cir. 2011); *see also United States*

21  *v. Mitchell*, 445 U.S. 535, 538 (1980).

22          The FTCA waives the government's sovereign immunity for tort claims arising out of

23  negligent conduct of government employees acting within the scope of their employment.

24  *Terbush v. United States*, 516 F.3d 1125, 1128 (9th Cir. 2008); *see also United States v.*

25  *Sherwood*, 312 U.S. 584, 586 (1941).  Pursuant to the FTCA, the United States can thus be sued

26  ────────────────────

27  [1]  The tragic events which took place in Yosemite National Park giving rise to this action have obviously had a devastating impact on the lives of the plaintiffs.  Despite that devastating impact, however, the issue before this court is whether the United States is immune from suit in this

28  instance, thereby depriving this court of subject matter jurisdiction over the action.

                                                 3

1   "under circumstances where the United States, if a private person, would be liable to the claimant

2   in accordance with the law of the place where the act or omission occurred."  28 U.S.C.

3   § 1346(b)(1); *Chadd*, 494 F.3d at 1109.

4         The FTCA provides various exceptions to this broad waiver of sovereign immunity.  One

5   such carve-out is the discretionary function exception, which provides immunity from suit for

6   "[a]ny claim based upon the exercise or performance or the failure to exercise or perform a

7   discretionary function or duty on the part of a federal agency or an employee of the Government,

8   whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  The exception is

9   designed to "prevent judicial 'second-guessing' of legislative and administrative decisions

10  grounded in social, economic, and political policy through the medium of an action in tort."

11  *Chadd*, 794 F.3d at 1108 (citing *United States v. S.A. Empresa de Viacao Aerea Rio Grandense*

12  *(Varig Airlines)*, 467 U.S. 797 (1984)).  "The government bears the burden of proving that the

13  discretionary function exception applies."  *Myers v. United States*, 652 F.3d 1021, 1028 (9th Cir.

14  2011).

15        In *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988), the Supreme Court

16  established a two-step test for determining the applicability of the discretionary function

17  exception.  Under that test, this court must first consider whether the challenged conduct is

18  "discretionary in nature," that is, whether the actions "involve an 'element of judgment or

19  choice.'"  *Terbush*, 516 F.3d at 1129 (quoting *United States v. Gaubert*, 499 U.S. 315, 327

20  (1991)); *see also Berkovitz*, 486 U.S. at 536 (noting that the focus is on the nature of the conduct

21  rather than the status of the actor).  The discretionary function exception will not apply if "a

22  federal statute, regulation, or policy specifically prescribes a course of action for an employee to

23  follow," because "there can be no element of discretion when an employee has no rightful option

24  but to adhere to the directive."  *Terbush*, 516 F.3d at 1129; *see also Berkovitz*, 486 U.S. at 536.  If

25  the *Berkovitz* test is satisfied at step one, the analysis proceeds to the second step.

26        The second step of the test requires the court to determine whether the discretion left to

27  the government "is of the kind that the discretionary function exception was designed to shield,"

28  that is, discretion rooted in "considerations of public policy."  *Bailey v. United States*, 623 F.3d

855, 860 (9th Cir. 2010); *see also Myers*, 652 F.3d at 1028.  The key inquiry is whether the decision giving rise to tort liability is "susceptible to a policy analysis." *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998); *see also Gaubert*, 499 U.S. at 325 (emphasizing that the focus is "on the nature of the actions taken" rather than on the agent's subjective intent); *Chadd*, 794 F.3d at 1109 (noting that the exception is not confined to the policy or planning level).  If the relevant rule gives government employees discretion under *Berkovitz* at step one of the analysis, there is "a strong presumption" that the authorized conduct involves consideration of public policy under *Berkovitz* at step two of that analysis.  *See Chadd*, 794 F.3d at 1109.  A plaintiff can nonetheless overcome this presumption by alleging facts supporting a finding that the challenged conduct is not of the type that "can be said to be grounded in the policy of the regulatory regime." *Gaubert*, 499 U.S. at 324–25.[2]

---

[2]  It has been held that the challenged government decision need not actually have been grounded in policy considerations to satisfy the second step of the *Berkovitz* test, so long as the decision theoretically implicates policy concerns.  *See e.g.*, *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998) (the challenged decision "need not be actually grounded in policy considerations"); *see also Gibson v. United States*, 809 F.3d 807, 813 (5th Cir. 2016) (the inquiry is "not whether the decision maker in fact engaged in a policy analysis"); *Herden v. United States*, 726 F.3d 1042, 1047 (8th Cir. 2013) ("[T]he [discretionary function] exception applies 'whether or not [a] defendant in fact engaged in conscious policy-balancing.") (en banc) (quoting *C.R.S. ex rel. D.B.S. v. United States*, 11 F.3d 791, 801 (8th Cir. 1993)); *Cranford v. United States*, 466 F.3d 955, 955 (11th Cir. 2006) (the discretionary function exception analysis does not focus "on whether the agent actually weighed policy considerations"); *Smith v. Washington Metropolitan Area Transit Authority*, 290 F.3d 201, 214 (4th Cir. 2002) (the exception can apply "without any showing that its employees actually considered policy goals in making the decisions alleged to be negligent.").  The Supreme Court, however, has never stated that the exception applies to government conduct not actually rooted in policy considerations.  *See generally Gaubert*, 499 U.S. at 323 ("[T]he exception protects only government actions and decisions based on considerations of public policy.").  For this reason, the Ninth Circuit's decision in *Miller*, and those like it, have been subject to some criticism.  *See Chadd v. United States*, 794 F.3d 1104, 1114 (9th Cir. 2015) (Berzon, concurring) (criticizing the holding in *Miller* that the challenged decision need not be actually grounded in policy considerations and observing "that is not what *Gaubert* says—it says the opposite.")  According to Judge Berzon's well-reasoned concurring opinion in *Chadd*, "the proper rule is this: In every case, the relevant decision does need to be 'actually grounded in policy considerations,' but, as a practical and evidentiary matter, the fact that a decision is 'susceptible to a policy analysis' creates a strong presumption that it was actually made for policy reasons, rebuttable only by persuasive evidence to the contrary." *Chadd*, 794 F.3d at 1114; *see also Gonzalez v. United States*, 814 F.3d 1022, 1040-43 & n. 2 (9th Cir. 2015) (Berzon, dissenting).  However, *Miller* remains the controlling Ninth Circuit precedent binding on this court.  *See Chadd*, 794 F.3d at 1114.

In applying the second step of the *Berkovitz* analysis, the Ninth Circuit has identified certain governmental decisions that are not of the kind that the discretionary function exception was designed to shield.  For example, the court has observed that "actions based on technical or scientific standards" are generally not protected from liability by the discretionary function exception.  *Marlys Bear Medicine v. U.S. ex rel. Secretary of Dep't of Interior*, 241 F.3d 1208, 1214 (9th Cir. 2001) ("those actions do not involve a weighing of policy considerations").  Likewise, actions implementing prior policy decisions have been found to be not susceptible to policy analysis, absent evidence to the contrary.  *Whisnant v. United States*, 400 F.3d 1177, 1183 n.3 (9th Cir. 2005); *Summers v. United States*, 905 F.2d 1212, 1216 (9th Cir. 1990) ("[L]iability for negligence may be imposed where, as here, the governmental decision involved is found not to be grounded in economic, political, or social judgment."); *see also Gotha v. United States*, 115 F.3d 176, 181–82 (3d Cir. 1997) (observing that the discretionary function exception is not meant to apply to "mundane, administrative, garden-variety housekeeping problem[s]"); *but cf. Cope v. Scott*, 45 F.3d 445, 449 (D.C. Cir. 1995) (cautioning against excessive focus on the distinction between implementation or execution of policy decisions, and emphasizing that the critical inquiry is "[w]hether the nature of the decision involved the exercise of policy judgment").

Ultimately, if the challenged act or omission satisfies the two steps of the *Berkovitz* test, the government is immune from suit based on that act or omission, and federal courts lack subject matter jurisdiction over the action.  *Bailey*, 623 F.3d at 860.  This immunity exists even if the act or omission in question constituted an abuse of discretion or was a wrong choice under the circumstances.  *See* 28 U.S.C. § 2680(a); *Terbush*, 516 3d. at 1129 ("Even if the decision is an abuse of the discretion granted, the exception will apply.")

## II.   Application of the Discretionary Function Exception to Plaintiffs' Claims

### a.   *Picnic Table Maintenance Claim*

In moving to dismiss plaintiffs' complaint, defendant United States argues that plaintiffs' negligence claim concerning maintenance of picnic tables in Yosemite National Park is barred by the discretionary function exception.  (Doc. No. 22-1 at 21.)  Plaintiffs do not oppose defendant's motion to dismiss to the extent it is directed at their picnic table maintenance claim.  (Doc. No. 26

6

1    at 7, n.1.)  Accordingly the court grants defendant's motion to dismiss this claim of plaintiffs.

2         *b.   Tree Maintenance Claim*

3         Defendant United States argues that plaintiff's negligence claim related to tree

4    maintenance in Yosemite Park is also barred by the discretionary function exception, and that this

5    court therefore lacks subject matter jurisdiction over this action.  (Doc. No. 22-1 at 17.)

6    Defendant's argument tracks the two-part test set out in *Berkovitz*.  First, defendant argues that

7    tree management in national parks is a discretionary activity since the policies of the NPS with

8    respect to tree maintenance do not constitute specific, mandatory regulations.  (*Id.*)  Defendant

9    emphasizes that there was no rule in place requiring the NPS to inspect the tree that ultimately

10   injured plaintiff Claudine Kobi in order to determine whether that tree posed a particular level of

11   public danger, nor was there any rule requiring the NPS to mitigate any danger posed by that tree.

12   (Doc. No. 27 at 5.)  Defendant United States also contends that NPS management of trees is

13   susceptible to policy analysis in that it implicates policy goals related to environmental

14   conservation, park visitor enjoyment and safety, and budgetary considerations.  (Doc. No. 22-1 at

15   18–20.)  In support of these arguments, defendant United States points to the NPS's enabling

16   statute, the Organic Act, 39 Stat. 535 (Aug. 25, 1916), as well as to various NPS-issued policies,

17   such as the 2006 NPS Management Policies, the NPS Directive for the Pacific West Region,

18   PWR-062, and the 1993 NPS Guidelines for Managing Hazardous Trees.  (Doc. Nos. 22-3 at 2–

19   13; 22-4 at 2–3; 22-5 at 2–12).  The United States also cites to the following evidence:  (i) the

20   declaration of Brian S. Mattos, the Park Forester at Yosemite National Park who coordinated the

21   tree-hazard management program at the park and who describes it as a flexible framework

22   granting the NPS discretion, (Doc. No. 22-2 at 2,22, 28, 33, 49,  ¶¶ 1, 3); (ii) the deposition of

23   Mattos, (Doc. No. 22-16); and (iii) the deposition of Larry Castro, a NPS forestry supervisor, who

24   describes NPS tree hazard mitigation policies as requiring employees to rely on "knowledge and

25   experience," (Doc. No. 22-17 at 10–14, 17–20).

26        Plaintiffs counter that the discretionary function exception does not bar their claim based

27   upon alleged negligent tree management.  (Doc. No. 26 at 19–21.)  First, plaintiffs argue that their

28   claim does not fail under the first step of the *Berkovitz* test because it does not challenge the NPS

7

1    hazard mitigation policies, but instead challenges the failure to implement existing tree

2    management policies.  (*Id.* at 20–21.)[3]  Secondly, plaintiffs argue that even if the defendant's

3    decisions concerning tree hazard management in the Swinging Bridge Picnic Area were

4    discretionary, these decisions were based on technical and scientific considerations, and were

5    therefore not susceptible to policy analysis under *Berkovitz*'s second step.  (*Id.* at 21–23.)

6         "Whether a challenged action falls within the discretionary function exception requires a

7    particularized analysis of the specific agency action challenged."  *Young v. United States*, 769

8    F.3d 1047, 1053 (9th Cir. 2014) (citing *GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174

9    (9th Cir. 2002)).  Here, plaintiffs challenge the NPS's inspection and management of the black

10   oak that injured plaintiff Claudine Kobi.  (Doc. No. 1 at 6, ¶ 23.)  In particular, plaintiffs argue

11   that the NPS assessment and response to risks created by that tree were unreasonable.  (*Id.*)

12   Based on the two-part test set out in *Berkovitz*, however, the court must conclude that the

13   discretionary function exception precludes plaintiff's claim for alleged negligent tree hazard

14   management.

15        First, the conduct challenged by plaintiffs in this action involved a matter of choice or

16   judgment by the NPS.  In this regard, policies concerning tree hazard management in Yosemite

17   National Park come in three different forms: federal statutes, NPS-promulgated policies, and

18   Yosemite Annual Work plans.  The authority of the NPS to manage national parks is generally

19   outlined in the Organic Act, 54 U.S.C. § 100101(a) (amending and replacing 16 U.S.C. § 1

20   (repealed 2014)), which grants the NPS a broad mandate "to conserve the scenery and the natural

21   and historic objects and the wild life therein and to provide for the enjoyment of the same in such

22   manner and by such means as will leave them unimpaired for the enjoyment of future

23   generations."  The act also authorizes the Secretary of the Interior to "provide for the destruction

24   of such animals and plant life as may be detrimental to the use of any System unit."  54 U.S.C. §

25   100752.  However, the statute does not articulate specific methods for implementing these broad

26   mandates but rather sets out only a general framework for national park management.  Pursuant to

27

28   ---
     [3]  Plaintiffs' counsel conceded at oral argument on the pending motion that the NPS was not
     subject to mandatory policies requiring any particular form of tree hazard management.

1  federal statutory grants of authority, the NPS thus "[has] discretion to design and implement a

2  policy for evaluating and removing trees." *Autery v. United States*, 992 F.2d 1523, 1528 (11th

3  Cir. 1993) (finding that the Organic Act gave the NPS discretion to design and implement a

4  policy for evaluating and removing trees from national parks); *see Chadd*, 794 F.3d at 1110

5  (concluding that the Organic Act provided the NPS with discretion in deciding how to manage

6  public safety hazards presented by non-native animal species living in national parks); *Young*,

7  769 F.3d at 1054–55 (finding that the Organic Act gives the NPS discretion with respect to design

8  and construction of trail areas in national parks); *see also Zumwalt v. United States*, 928 F.2d 951,

9  954 (10th Cir. 1991) (finding that no federal or park-specific guidelines required any particular

10  protocol for managing hazards on park trails, and that hazard management was a discretionary

11  function as defined under *Berkovitz*).[4]

12

13  _____

4   The facts of these cases are illuminating.  In *Chadd* the surviving wife of a hiker killed in
14  Olympic National Park by a mountain goat sued under the FTCA based on the actions or inaction
    of the NPS.  794 F.3d at 1107.  Park officials learned as early as 2006 that the goat population
15  within the park was displaying aggressive behavior toward humans.  *Id*.  Park officials had
    investigated this behavior, causing them to take actions including use of tracking collars, giving
16  park visitors verbal and written warnings, and shooting paint balls and bean bags at the goats.  *Id*.
    When reports of aggressive behavior by goats toward hikers continued to be received in 2009–10,
17  officials considered other courses of action including possibly relocation of the animals.
    However, park officials had taken no further action by October 16, 2010, when a 370-pound male
18  goat attacked and killed plaintiff's husband.  *Id*. at 1108.  Against this factual background, the
    Ninth Circuit concluded that "[b]ecause the decision to use non-lethal methods to manage the
19  goat was susceptible to policy analysis, the discretionary function exception applies."  *Id*. at 1114.
    Similarly in *Autery* the plaintiffs filed an FTCA suit to recover damages for injuries and a death
20  suffered when a tree fell on a car in the Great Smokey Mountain National Park, claiming that
    park officials had failed to devise an appropriate tree hazard management plan and to properly
21  inspect, identify and remove the hazardous trees which inflicted those injuries.  992 F.2d at 1524–
    25.  Nonetheless, after analyzing the applicable statutes, regulations and policies, the Eleventh
22  Circuit concluded that the decisions of park personnel fell within the discretionary function exception
23  and that the federal courts lacked jurisdictions over the plaintiffs' claims.  *Id.* at 1531.  In
    *Zumwalt* the Tenth Circuit addressed an FTCA claim that the NPS had failed to properly inspect
24  and maintain a National Monument resulting in plaintiff's injuries and came to the same
    conclusion—that the permissible exercise of policy judgment insulated the United States from
25  liability under the discretionary function exception.  928 F.2d at 951–52, 956; *see also Hatcher v.*
26  *United States*, 855 F. Supp. 2d 728, 732–33 (E.D. Tenn. 2012) (dismissing under the
    discretionary function exception where the plaintiff alleged that park personnel were negligent in
27  connection with the maintenance of a tree that fell and struck him in the picnic area of a national
28  park).

The NPS has promulgated various policies for tree management in national parks.  NPS Management Policies broadly set out the responsibilities of the agency and observe that plant management may be necessary "to maintain human safety."  (Doc. No. 22-3 at 8.)  However, those policies do not specify a method for carrying out such management, stating only that "discretionary management activities may be undertaken only to the extent that they will not impair park resources and values."  (*Id.* at 11.)  Directive PWR-062 also addresses management of hazardous trees in the Pacific West Region, an area which includes Yosemite National Park.  (Doc. No. 22-4.)  This directive states that "[s]urveys/inspections of tree hazards should be made on a regular periodic basis," and sets out various potential methods that the NPS may employ to mitigate tree hazards.  (Doc. No. 22-4 at 2–13.)  PWR-062 does not, however, require that any specific methodology be employed, providing only that "[t]he Park Superintendent retains discretion to administer the [tree management] program with available park staff and financial resources in the context of other legal requirements and other considerations."  (*Id.* at 5.)  The NPS's 1993 Guidelines for Managing Hazardous Trees provide further guidance on managing dangerous tree conditions.  But those guidelines specifically describe hazard reduction as a "discretionary function for the park Superintendent," and do not establish any concrete requirements for NPS officials to follow.  (Doc. No. 22-5 at 2–12.)

Altogether, these NPS policies and guidelines task the NPS with inspecting trees and mitigating public safety hazards, but do not establish any rules about when to carry out such inspections, what methodology must be employed, or what kinds of mitigation tactics are to be deployed.  Finally, NPS tree management policies have been found to grant discretion in identifying and removing hazardous trees.  *See Valdez v. United States*, 56 F.3d 1177, 1179–80 (9th Cir. 1995) (finding that NPS management guidelines "can be considered mandatory only in the larger sense that they set forth broad policy goals attainable only by the exercise of discretionary decisions"); *see also Childers v. United States*, 40 F.3d 973, 975–76 (9th Cir. 1994) (finding, in the context of an action involving the death of an eleven-year-old boy as the result of a winter hiking accident in Yellowstone National Park, that both federal law and NPS regulations and guidelines leave decisions concerning national park trail maintenance "either explicitly or

1    implicitly, in the hands of NPS rangers").

2          The Yosemite Annual Work Plans set out specific tasks for the NPS to accomplish

3    throughout the course of each year within the national park, detailing a schedule for identifying

4    and removing tree hazards in particular locations.  (Doc. No. 22-7.)  While the 2013 Annual

5    Work Plan indicated that the NPS would carry out annual tree hazard mitigation in Valley Picnic

6    Areas during February of that year, it provided no further information as to the form those

7    mitigation efforts should or would take.  (Doc. No. 22-7 at 6.)  The Yosemite Work Plan therefore

8    fails to impose any mandatory requirements on the NPS as to management of tree hazards.

9    Having found no specific tree hazard management protocol mandated by federal statute, NPS

10   policy, or Yosemite National Park policy, the court must conclude that the government has

11   satisfied the first step of the *Berkovitz* test for application of the discretionary function exception.

12         Moving to the second step of the test, the court concludes that the specific tree

13   management decisions challenged by plaintiffs in their claim are also susceptible to policy

14   analysis.  Because the court has concluded that the NPS decisions concerning tree hazard

15   management are discretionary, there is "a strong presumption" that the specific conduct

16   challenged by plaintiffs involved a weighing of public policy considerations.  *See Chadd*, 794

17   F.3d at 1109.  Defendant has also provided abundant evidence indicating that decisions about

18   where, when, and how to manage dangers posed by trees within Yosemite National Park

19   implicated larger concerns—economic considerations, employee safety concerns, cultural

20   considerations, and environmental interests.  The NPS Policies of 2006, Directive PWR-062, and

21   the statements and depositions of NPS employees all reference the medley of policy

22   considerations implicated in tree hazard management decisions of the NPS.

23         Plaintiffs have not offered evidence rebutting the presumption that the NPS exercised the

24   discretion granted to them under the relevant federal statutes and NPS guidelines.  *See Chadd*,

25   794 F.3d at 1109.  In arguing that defendant's actions did not implicate policy judgments because

26   they merely involved implementation of existing policy decisions, plaintiffs ignore the recognized

27   principle that "implementation of a government policy *is* shielded where the implementation itself

28   implicates policy concerns."  *Whisnant*, 400 F.3d at 1183 n.3; *see also Chadd*, 794 F.3d at 1112;

1    *Camozzi v. Roland/Miller and Hope Consulting Group*, 866 F.2d 287, 292 (9th Cir. 1989)

2    ("policy judgments made by officials in implementing the agency's policies and programs" are

3    subject to the discretionary function exception) (citing *McMichael v. United States*, 751 F.2d 303

4    (8th Cir. 1985)); *cf. Soldano v. United States*, 453 F.3d 1140, 1150 (9th Cir. 2006) (concluding

5    that the discretionary function exception did not apply because there was "no reason" justifying

6    the government's failure to implement a safety measure).

7         Plaintiffs have presented no evidence suggesting that the failure to address the alleged

8    hazard occurred after the NPS decided to inspect the particular tree that harmed plaintiff, or after

9    the NPS decided to mitigate any specific hazard posed by the tree.  Thus, this case is

10   distinguishable from actions where the evidence before the court affirmatively demonstrates that

11   government actors did not consider policy objectives when implementing policy decisions.  *See*

12   *Whisnant*, 400 F.3d at 1183 (finding that failure to control the accumulation of toxic mold on a

13   naval base commissary was not a decision susceptible to policy analysis because the government

14   had failed to implement safety decisions after being warned of the specific unsafe conditions

15   challenged by plaintiff); *ARA Leisure Services v. United States*, 832 F.2d 193, 195 (9th Cir. 1987)

16   (finding that the NPS's failure to carry out road maintenance work was not susceptible to policy

17   analysis given that the NPS had already made policy decisions specifically requiring park roads to

18   "be firm, and of uniform cross section"); *Madison v. United States*, 679 F.2d 736, 741 (8th Cir.

19   1982) (finding that once the government made the discretionary decision to carry out certain

20   safety protocols related to explosives manufacturing, the "simple failure to fulfill those

21   obligations was not within the [discretionary function] exception"); *cf. Varig*, 467 U.S. at 820

22   (finding that Federal Aviation Administration agents' decision to not inspect a particular aircraft

23   for safety issues was susceptible to policy analysis because the conduct was "within the range of

24   choice accorded by federal policy and law"); *Childers*, 40 F.3d at 976 (finding that NPS decisions

25   concerning maintenance of park trails required them "to balance access with safety, and take into

26   account conservation and resources in designing area plans and making individual trail

27   determinations).

28   /////

There is also no evidence before the court suggesting that the challenged government decisions were based on objective, scientific standards which would make them not susceptible to policy analysis.  Plaintiffs here challenge NPS actions concerning identification and mitigation of tree hazards, conduct reliant on judgment and consideration of NPS agents.  This is not a case where the government conduct was rooted in application of a precise scientific formula, such that only one course of action was appropriate under the circumstances.  *See In re Glacier Bay*, 71 F.3d 1447, 1453 (9th Cir. 1995) (citation omitted) (finding that the discretionary function exception did not apply because plaintiff's claims challenged "[d]ecisions involving the application of objective scientific standards"); *Kennewick Irrigation Dist*., 880 F.2d at 1030 ("[D]ecisions involving 'the application of objective scientific standards'—such as how much dynamite to use to produce a refraction—are not insulated by the discretionary function exception.").  Although  plaintiffs argue that identifying defects and weaknesses in trees requires technical judgment, "[t]he fact that [defendant's] decision involved technical or professional judgment at the operational level is not enough to remove his [or her] decision from the protection of the discretionary function exception." *Herden v. United States*, 729 F.3d 1042, 1048 (8th Cir. 2013).

For these reasons the court concludes that the government has also satisfied the second part of the *Berkovitz* test with respect to plaintiffs' negligent tree maintenance claim, and that the discretionary function exception therefore applies.  *See Valdez*, 56 F.3d at 1179–80 (concluding that NPS decisions concerning national park trail maintenance "clearly implicate[] a choice between the competing policy considerations of maximizing access to and preservation of natural resources versus the need to minimize potential safety hazards").

Defendant's motion to dismiss plaintiffs' negligent tree maintenance claim for lack of subject matter jurisdiction will therefore be granted.

*c.  Loss of Consortium Claim*

Having concluded that plaintiffs cannot maintain the underlying negligence claims against defendant, plaintiffs' claim for loss of consortium is thereby also subject to dismissal.  *See Calatayud v. California*, 18 Cal. 4th 1057, 1060 n.4 (1998) (concluding that a loss of consortium

is a derivative claim and necessarily fails upon dismissal of the underlying claim); *see also Ferrari v. Natural Partners, Inc.*, No. 15-CV-04787-LHK, 2016 WL 4440242, at *7 (N.D. Cal. Aug. 23, 2016) (same).

CONCLUSION

For all of the reasons set forth above:

1.  Defendant's motion to dismiss (Doc. No. 22) is granted;

2.  This action is dismissed;

3.  All previously scheduled dates in this action are vacated; and

4.  The Clerk of the Court is directed to close this action.

IT IS SO ORDERED.

Dated:   **November 4, 2016**

UNITED STATES DISTRICT JUDGE

14